**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

CAPITALSOURCE FINANCE LLC *

Plaintiff, *

v. * Civil Action No. AW-06-2028

PITTSFIELD WEAVING
COMPANY, INC., *et al.*, *

Defendants. *

* * * * *

**MEMORANDUM OPINION**

This action involves a suit by CapitalSource Finance LLC ("CapitalSource" or "Plaintiff") against Pittsfield Weaving Company ("Pittsfield" or "Borrower")[1], and Gilbert and Susan Bleckmann (the "Bleckmanns" or "Guarantors"), (collectively "Defendants") for breach of contract and related claims. Currently pending before the Court is Plaintiff's Motion to Dismiss the Counterclaims of Pittsfield (Paper No. 24), Plaintiff's Motion to Dismiss the Bleckmanns' Counterclaims (Paper No. 27), and Plaintiff's Motion to Dismiss the Bleckmanns' Affirmative Defenses (Paper No. 29). On December 8, 2006, the Court heard arguments on the motion via telephonic conference. The Court granted Plaintiff's motions to dismiss Defendants' counterclaims, and granted Plaintiff's motion to strike Defendants' affirmative defenses as plead. However, the Court also granted Defendants leave to amend their Answer and affirmative defenses in accordance with the Court's comments to the parties. This Memorandum Opinion memorializes the Court's findings of fact and conclusions of law.

**FACTUAL AND PROCEDURAL BACKGROUND**

---

[1] Pittsfield is currently in bankruptcy proceedings.

This action for breach of contract arises out of Pittsfield's breach of its obligations to CapitalSource under a Credit Agreement and the Guarantors' failure to satisfy their obligations under a Guaranty Agreement covering Pittsfield's obligations to CapitalSource. CapitalSource is a specialized commercial finance company offering financing to borrowers throughout the United States. In or about April 2004, Pittsfield, a company in the business of manufacturing woven and non-woven labels, sought a multi-million dollar loan from CapitalSource. (Counterclaim ¶¶ 46-47). On January 27, 2005, CapitalSource and Pittsfield entered into the Credit Agreement. (Counterclaim ¶ 46). Under the Credit Agreement, CapitalSource agreed to make loans and other financial accommodations to Pittsfield via revolving credit facilities of up to $3 million in the aggregate, and a term loan in the maximum principal amount of $1.6 million, for refinancing Pittsfield's then-existing obligations and indebtedness. By executing the Credit Agreement, Pittsfield promised to repay the loans in accordance with the terms of the loan documents. (*See* Credit Agreement, Compl. Ex. 1A).

Pittsfield further agreed that in the event of default, CapitalSource would have a series of rights and remedies as set forth in the Credit Agreement. These included, without limitation: (1) the right to charge interest at a Default Rate; (2) the right to terminate its obligations under the Credit Agreement and accelerate Pittsfield's Obligations, without notice or demand; and (3) the right to exercise "any and all rights, options and remedies provided for in the loan documents, under the UCC or at law or in equity." (Credit Agreement at §§ 3.5, 8 and 9.1). In addition, in the Credit Agreement, Pittsfield waived any "setoff, counterclaim . . . or defenses" and "forever discharged [CapitalSource] . . . from any and all causes of action . . . of any kind whatsoever . . . " that it could assert in connection with the Credit Agreement. (Credit Agreement at §§ 10.1 and 12.11).

In October 2005, CapitalSource discovered that Pittsfield had submitted Borrowing Base Certificates that were not true in violation of Sections 7.8 and 8(b) of the Credit Agreement. (Counterclaim ¶ 55). By the end of October 2005, Pittsfield was out of compliance with the terms of the Credit Agreement and required an overadvance. (Counterclaim ¶ 54). CapitalSource, however, agreed to "work with" Pittsfield instead of accelerating its Obligations under the Credit Agreement. As of December 1, 2005, Pittsfield remained in default under the Credit Agreement. Accordingly, CapitalSource charged Pittsfield a 5% default interest rate for November.

In spite of numerous breaches under the Credit Agreement, CapitalSource continued to work with Pittsfield from December 2005 through the filing of the instant lawsuit. By August 2006, Pittsfield had been in default under the Credit Agreement for nine (9) months and was over $4 million in debt to CapitalSource. Accordingly, on August 7, 2006, CapitalSource initiated this action

and sought the appointment of a receiver. Pittsfield concedes it has breached the Agreement (Counterclaim ¶ 80), but claims CapitalSource: (1) breached an implied duty of good faith and fair dealing by exercising its rights under the Credit Agreement (including bringing the instant action) (Counterclaim ¶¶ 82-97); and (2) negligently misrepresented that it would "work with" Pittsfield. (Counterclaim ¶¶ 98-103). The Bleckmanns' counterclaims essentially duplicate those of Pittsfield. In addition, the Bleckmanns have asserted nine (9) affirmative defenses, all of which CapitalSource has moved to strike.

**STANDARD OF REVIEW**

A court must deny a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of

its claim which would entitle it to relief." *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In determining whether to dismiss a complaint pursuant to Rule 12(b)(6), this Court must view the well-pleaded material allegations in the light most favorable to the plaintiff and accept the factual allegations contained within the plaintiff's complaint as true. *See Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997) (citing *Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 217-18 (4th Cir. 1994)); *Chisolm v. TranSouth Finan. Corp.*, 95 F.3d 331, 334 (4th Cir. 1996). The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)); *Young v. City of Mount Ranier*, 238 F.3d 576, 577 (4th Cir. 2001) (the mere "presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)"). Nor is the Court "bound to accept [Plaintiffs'] conclusory allegations regarding the legal effect of the facts alleged." *United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1994); *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Therefore, a complaint may be dismissed as a matter of law only if it lacks a cognizable legal theory *or* if it alleges insufficient facts to support a cognizable legal theory. *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984) (citing 2A J. Moore, Moore's Federal Practice ¶ 12.08 at 2271 (2d ed. 1982)).

## ANALYSIS

### A. The Motions to Dismiss Defendants' Counterclaims

Since the counterclaims of Pittsfield and the Bleckmanns are essentially the same, CapitalSource's motions to dismiss equally apply to both sets of Defendants. Defendants assert two counterclaims: (1) breach of an implied duty of good faith and fair dealing; and (2) negligent

misrepresentation.

**1. Implied Duty of Good Faith and Fair Dealing**

Defendants argue that under Maryland law,[2] it is well settled that "in every contract there exists an implied covenant that each parties thereto will act in good faith and deal fairly with the others." *Food Fair Stores, Inc. v. Blumberg*, 200 A.2d 166, 174 (Md. 1964). The Fourth Circuit has explained that the "implied duty of good faith and fair dealing as recognized in Maryland requires that one party to a contract not frustrate the other party's performance." *Eastern Shore Markets, Inc. v. J.D. Associates*, 213 F.3d 175, 184 (4th Cir. 2000). Assuming that the Credit Agreement is a contract as alleged in the Complaint, the duty of good faith and fair dealing imposed by Maryland law obligates CapitalSource to exercise good faith in performing its contractual obligations. Defendants contend that while the duty of good faith does not change the terms of the contract, it does (a) define and limit the discretion which the parties have in the performance or enforcement of the contract and (b) permit a court to address issues arising from contractual silence regarding a specific issue. The duties of good faith and fair dealing prohibit one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract.

Defendants claim that CapitalSource has been engaged in discussions with one or more potential buyers of Pittsfield's business or assets. Further, by its actions, decisions, indecision, omissions, and refusal to cooperate with Pittsfield, CapitalSource has made it impossible for Pittsfield to satisfy its financial obligations under the Credit Agreement.[3] Defendants further claim

---

[2] The parties apparently agree that Maryland law governs this diversity action.

[3] As a result of Pittsfield's inability to comply with the terms of the Credit Agreement, CapitalSource and Pittsfield entered into two Forbearance and Modification Agreements (on February 21 and March 17, 2006), and two amendments to the March 17, 2006 Forbearance

that the duty of good faith and the "commercial reasonableness" doctrine imposed by the Uniform Commercial Code also prevent CapitalSource from rejecting legitimate business proposals intended to maximize the value of its inventory collateral simply because it "prefers to force Pittsfield to make the Hobson's choice of defaulting under enforceable contracts with valued customers or generate new accounts for [CapitalSource]." *See* Pittsfield's Verified Answer to Complaint ¶ 96; The Bleckmann's Amended Answer to Complaint and Counterclaim ¶ 36.

Defendants rely principally on the Fourth Circuit opinion in *Eastern Shore* to support their contention that a cause of action exists for the breach of an implied duty of good faith and fair dealing. *See Eastern Shore Markets, Inc. v. J.D. Associates*, 213 F.3d 175, 184 (4th Cir. 2000). While Maryland law does impose upon contracting parties an implied duty of good faith and fair dealing, Defendants' application of that law to the present facts is misplaced. The *Eastern Shore* court did not recognize a separate cause of action for the breach of an implied duty of good faith and fair dealing. Instead, the court simply recognized that the duty exists, as opposed to a cause of action for breach of that duty.

A decision by Judge Andre Davis of this Court is instructive and, frankly, dispositive of the issue here. *See Eaglehead Corp., et al. v. Cambridge Capital Group, Inc., et al.*, 170 F. Supp. 2d 552 (D. Md. 2001). In *Eaglehead*, the plaintiff borrowers sued the defendant lenders for breach of contract and the implied duty of good faith and fair dealing, among other causes of action. The Court dismissed the breach of implied duty claim on the grounds that Maryland law did not recognize such a claim. *Id*. Judge Davis explained that

---

Agreement (on April 17 and May 31, 2006) ("Forbearance Agreements"). *See* Compl. Ex. 1B-1E. Pittsfield has apparently defaulted under these agreements as well.

> Maryland does not recognize a separate cause of action for the breach of implied duty of good faith and fair dealing. As I discussed in *Wootton Enter., Inc. v. Subaru of America, Inc.*, 134 F. Supp. 2d 698 (D. Md. 2001), there is an implied duty of good faith and fair dealing in all contracts under Maryland law. This duty simply prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract, but does not require affirmative action not mandated by the contract. Furthermore, this implied duty cannot override or modify specific contractual terms. While this implied duty applies to performance of contractual obligations, Maryland courts have not explicitly recognized a separate cause of action relating to this duty. Accordingly, I shall dismiss [the breach of implied duty of good faith and fair dealing claim] for failure to state a claim.

*Id.* at 562 (internal citations omitted). In an unpublished opinion, the Fourth Circuit implicitly agreed with Judge Davis by affirming the dismissal of a breach of the covenant of good faith and fair dealing claim on the grounds that such an action is not recognized by Maryland courts. *See Estrin v. Natural Answers, Inc.*, 103 Fed. Appx. 702, 705 (4th Cir. 2004) (citing *Eaglehead Corp., et al. v. Cambridge Capital Group, Inc., et al.*, 170 F. Supp. 2d 552 (D. Md. 2001)). This Court has previously described this type of claim as "precisely the kind of meritless dispute between lender and defaulting commercial borrower that the courts . . . have been quick to put to rest." *Howard Oaks, Inc. v. Maryland Nat'l Bank*, 810 F. Supp. 674, 678 (D. Md. 1993). In like fashion, Defendants' counterclaims for breach of the implied duty of good faith and fair dealing must be dismissed.

**2. Negligent Misrepresentation**

Defendants claim CapitalSource had a duty to exercise due care in making representations to Pittsfield, including the representation that it would "work with" Pittsfield and that it would find a "global solution" to the business and financial problems affecting the company, some of which were allegedly caused by CapitalSource and some of which were beyond the reasonable control of either party. Defendants further assert that CapitalSource knew and intended that Pittsfield would

rely on these representations. According to Defendants, Pittsfield did in fact rely on the representations made by CapitalSource as shown by, among other things, (a) its retention of the consultants who were to be instrumental in the formulation of the global solution, (b) the provision of detailed information to Price Waterhouse regarding foreign issues and enhancements and improvements made to the patents, (c) the negotiation of the Financial Services Agreement with Wall Street Venture Capital as required by CapitalSource which admittedly did not select Wall Street, and (d) the weeks of work devoted to finding a qualified investment banker.

To maintain a claim for negligence, Defendants must establish that CapitalSource had a duty to "protect [them] from injury." *Jones v. Hyatt Ins. Agency, Inc.*, 741 A.2d 1099, 1106 (Md. 1999). "A contractual obligation, by itself, does not create a tort duty. Instead, the duty giving rise to a tort action must have some independent basis." *Id.* at 1107. Under Maryland law, "a claim for negligent misrepresentation is improper when . . . the only relationship between the parties is contractual, both parties are sophisticated, and the contract does not create an express duty of due care in making representations." *Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.*, 991 F.2d 94, 98 (4th Cir. 1993). The reasoning in *Martin Marietta* is directly applicable to the present case, and flatly disposes of Defendants' negligent misrepresentation counterclaim. "Courts have been exceedingly reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement." *Parker v. Columbia Bank*, 604 A.2d 521, 532 (Md. Ct. Spec. App. 1992). The Court finds the present circumstances insufficient to create a tort duty outside of the parties' contractual obligations. As a result, the Court will not impose such a duty here. Accordingly, Defendants' counterclaim for negligent misrepresentation must be dismissed.

**B. Motion to Dismiss Affirmative Defenses and Strike Portions of Amended Answer**

**1. Affirmative Defenses**

The Bleckmanns have asserted nine (9) affirmative defenses in their Answer. CapitalSource has moved to dismiss (or strike) all nine of the defenses. The Court will grant the motion for the reasons articulated in pages 5 - 11 of CapitalSource's Memorandum in Support of its Motion. In particular, the Bleckmann's breach of contract and misrepresentation affirmative defenses are stricken for the reasons set forth in the Court's analysis of Plaintiff's Motion to Dismiss Defendants' Counterclaims. Further, the *forum non conveniens* defense is stricken as an improper affirmative defense. The Court agrees with CapitalSource that the remaining affirmative defenses are not sufficiently plead, but disagrees that they should therefore be dismissed with prejudice. The Court will grant the Bleckmanns leave to amend their Pleading to comply with the Rules 8 and 9 of the Federal Rules of Civil Procedure. Further, the Court cautions Defendants that any amendment to their Pleading should comply with the provisions of Rule 11 of the Federal Rules of Civil Procedure.

**2. Responses to Allegations in Complaint**

In paragraphs 8, 11, 15, and 17 of their Answer, the Bleckmanns refuse to answer certain allegations on the grounds that the allegations are "legal conclusions." Rule 8 requires a party responding to a pleading to admit or deny its allegations. The failure to deny is an admission. Here, the Bleckmanns have neither admitted nor denied the allegations referenced in paragraphs 8, 11, 15, and 17 of their Answer. This failure to deny can properly be deemed an admission of those particular allegations. However, the Court will not impose upon Defendants such a technical application of Rule 8. Since the Bleckmanns have leave to amend their Answer to properly plead their affirmative defenses, the Court will also grant the Bleckmanns leave to amend their Answer

to properly respond to the allegations referenced in paragraphs 8, 11, 15, and 17 of the Bleckmanns' Answer.

**3. Waiver**

CapitalSource claims that even if Defendants could have asserted their counterclaims, they would be precluded from doing so because they expressly waived and released such claims and any defenses by virtue of the terms of the Credit Agreement and Guaranty Agreement. The Court declines to reach the merits of Plaintiff's waiver argument. Instead, the Court instructs Defendant to consider the legal effect of the waiver terms when submitting their amended Answer, if any.

**CONCLUSION**

For the reasons stated above, the Court should GRANT Plaintiff's Motion to Dismiss the Counterclaims of Pittsfield and the Bleckmanns (Paper Nos. 24 and 27). Further, the Court will GRANT Plaintiff's Motion to Strike the Bleckmanns' Affirmative Defenses and Portions of their Answer (Paper No. 29), with leave to amend consistent with this Opinion.

Date: December 11, 2006

/s/
Alexander Williams, Jr.
United States District Judge