**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| CAPITALSOURCE FINANCE LLC | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. AW-06-2028 |
| PITTSFIELD WEAVING COMPANY, INC., *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \*

## MEMORANDUM OPINION

This action involves a suit by CapitalSource Finance LLC ("CapitalSource" or "Plaintiff") against Pittsfield Weaving Company ("Pittsfield")[1], and Gilbert and Susan Bleckmann ("Guarantors" or "Bleckmanns") for breach of contract and related claims. Currently pending before the Court is Plaintiff's Motion for Summary Judgment (Paper No. 75). Plaintiff contends that there are no genuine issues of material fact and Plaintiff is entitled to judgment as a matter of law on its breach of guaranty claims against the Bleckmanns. The Court held a hearing on the Motion on July 23, 2007. At oral argument, the Court rejected the Bleckmanns' arguments and opined that there were no genuine issues of material fact with respect to the Bleckmanns' liability under the Guaranty Agreement. The Court reserved ruling on the Motion at that time in order to provide the Bleckmanns an opportunity to present evidence that contradicts Plaintiff's calculation of damages. The Court set the matter down for an evidentiary hearing on August 9, 2007 to determine the amount of damages. On August 7, 2007, the parties filed a Joint Stipulation setting the amount of damages

---

[1] Pittsfield is currently in bankruptcy proceedings.

1

at $4,476,912.00 (Paper No. 89).[2] Having reviewed the entire record, and in light of the stipulated damage amount, the Court will grant Plaintiff's Motion for Summary Judgment.

## **FACTUAL AND PROCEDURAL BACKGROUND**

This action for breach of contract arises out of Defendant Pittsfield's breach of its obligations to CapitalSource under a Credit Agreement and the Guarantors' failure to satisfy their obligations under a Guaranty Agreement covering Pittsfield's obligations to CapitalSource. CapitalSource is a specialized commercial finance company offering financing to borrowers throughout the United States. In or about April 2004, Pittsfield, a company in the business of manufacturing woven and non-woven labels, sought a multi-million dollar loan from CapitalSource.

On January 27, 2005, CapitalSource and Pittsfield entered into a revolving Credit Agreement.[3] Under the Credit Agreement, CapitalSource agreed to make loans and other financial accommodations to Pittsfield via revolving credit facilities of up to $3 million in the aggregate, and a term loan in the maximum principal amount of $1.6 million, for refinancing Pittsfield's then-existing obligations and indebtedness. By executing the Credit Agreement, Pittsfield promised to repay the loans in accordance with the terms of the loan documents.

Pittsfield further agreed that in the event of default, CapitalSource would have a series of rights and remedies as set forth in the Credit Agreement. These included, without limitation: (1) the right to charge interest at a Default Rate; (2) the right to terminate its obligations under the Credit Agreement and accelerate Pittsfield's Obligations, without notice or demand; and (3) the right to

---

[2] The Stipulation expressly states that the stipulated amount of damages is not to be construed as an admission of liability or a waiver of any arguments with respect to contested issues in this case.

[3] Gilbert Bleckmann executed the Credit Agreement as President of Pittsfield.

exercise "any and all rights, options and remedies provided for in the loan documents, under the UCC or at law or in equity." (Credit Agreement at §§ 3.5, 8 and 9.1).  In addition, in the Credit Agreement, Pittsfield waived any "setoff, counterclaim . . . or defenses" and "forever discharged [CapitalSource] . . . from any and all causes of action . . . of any kind whatsoever . . . " that it could assert in connection with the Credit Agreement. (Credit Agreement at §§ 10.1 and 12.11).

On or about January 27, 2005, and as a condition precedent to CapitalSource's execution of the Credit Agreement, the Bleckmanns executed a Guaranty.  Pursuant to the terms of the Guaranty, the Bleckmanns guaranteed: (1) punctual payment and performance when due of all of Pittsfield's obligations to CapitalSource under the Credit Agreement; and (2) all costs, expenses, and liabilities, including attorneys' fees and expenses, incurred by CapitalSource to enforce the Guaranty and to collect all or part of Pittsfield's liabilities from the Guarantors. (Guaranty § 2).  The Bleckmanns also waived any "setoff . . . counterclaim . . . or defenses" and "forever discharged [CapitalSource] . . . from any and all causes of action . . . of any kind whatsoever . . ." that they could assert in connection with the Credit Agreement or Guaranty. (Guaranty §§ 5, 32).

In October 2005, CapitalSource discovered that Pittsfield had submitted Borrowing Base Certificates that were not true in violation of Sections 7.8 and 8(b) of the Credit Agreement.  By the end of October 2005, Pittsfield was out of compliance with the terms of the Credit Agreement and required an overadvance.  Despite Pittsfield's noncompliance with the terms of the Credit Agreement, CapitalSource agreed to "work with" Pittsfield instead of accelerating Pittsfield's obligations under the Credit Agreement.  As of December 1, 2005, Pittsfield remained in default under the Credit Agreement.  Accordingly, CapitalSource charged Pittsfield a 5% default interest rate for November 2005.

Despite numerous breaches under the Credit Agreement, CapitalSource continued to work

with Pittsfield from December 2005 through the filing of the instant lawsuit. As a result of Pittsfield's inability to comply with the terms of the Credit Agreement, CapitalSource and Pittsfield entered into: (1) a Forbearance and Modification Agreement dated February 21, 2006; (2) an Amended and Restated Forbearance and Modification Agreement dated March 17, 2006; (3) a First Amendment to the Restated Forbearance and Modification Agreement dated April 17, 2006; and (4) a Second Amendment to the Restated Forbearance and Modification Agreement dated May 31, 2006 (collectively referred to as the "Forbearance and Modification Agreements"). In each Forbearance and Modification Agreement, Pittsfield and the Bleckmanns, individually, "acknowledged and agreed" that Pittsfield was in default of the Credit Agreement as set forth in each agreement.

In addition to the notifications of default mentioned in the Forbearance and Modification Agreements, CapitalSource, in a discretionary funding letter dated July 28, 2006, provided Pittsfield and the Bleckmanns with further notice of the default, further notice that the entire outstanding balance of Pittsfield's obligations was currently due and payable, and further notice that any additional loans or advances under the Credit Agreement would be made on a day-to-day basis at the sole discretion of CapitalSource. By countersigning the July 28, 2006 discretionary funding letter, the Bleckmanns "acknowledged, accepted, and agreed" that Pittsfield was in default of the Credit Agreement as set forth in the notice and that Pittsfield owed CapitalSource $4,526,990.38 as of July 28, 2006.

On August 2, 2006, CapitalSource provided Pittsfield and Defendant Gilbert Bleckmann with a final Notice of Default and made a final demand to Defendants for payment under the terms of the Credit Agreement and the Guaranty. Five days later, on August 7, 2006, CapitalSource initiated this action and sought the appointment of a receiver. In its initial Answer to the Complaint, Defendants conceded that Pittsfield had breached the Credit Agreement, but brought a counterclaim against

4

CapitalSource for: (1) breached an implied duty of good faith and fair dealing by exercising its rights under the Credit Agreement (including bringing the instant action); and (2) negligently misrepresented that it would "work with" Pittsfield. In addition, the Bleckmanns asserted nine (9) affirmative defenses. On September 22, 2006, the Court was advised that Pittsfield had instituted bankruptcy proceedings, and the Court accordingly stayed all proceedings against Pittsfield (Paper No. 28).

By Memorandum Opinion and Order dated December 11, 2006, the Court dismissed with prejudice Defendants' counterclaims and struck all nine of the Bleckmanns' affirmative defenses (Paper Nos. 45, 46). The Court granted the Bleckmanns ten days leave to amend their Answer, but cautioned the Bleckmanns to only plead defenses if they can do so without running afoul their obligations under Rule 11. *See* Mem. Op. at 9 (December 11, 2006). The Bleckmanns filed an Amended Answer on December 21, 2006, raising no affirmative defenses but pleading allegations of duress and coercion as a response to one of Plaintiff's allegations. *See* Am. Answer at ¶ 6.

## **STANDARD OF REVIEW**

Summary judgment is only appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). In a motion for summary judgment, the moving party discharges its burden by showing an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted). However, the party who bears the burden of persuasion on a particular claim must present legally sufficient evidence to support each element of his claim. "[A] complete failure of proof concerning an

essential element . . . necessarily renders all other facts immaterial." To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## **ANALYSIS**

The relevant facts in this case are not genuinely in dispute. The Bleckmanns signed the Guaranty Agreement and agreed to guarantee the payments of Pittsfield's debts. The record clearly shows that Pittsfield defaulted on its obligations and the Bleckmanns have conceded in their Amended Answer that Pittsfield owes CapitalSource over $4 million. The Bleckmanns have not put forth any real evidence that challenges either CapitalSource's calculation of the amount owed or the value of the amount owed. The Bleckmanns simply make the bald assertion that they disagree with the amount CapitalSource set forth in its moving papers. However, the amount issue has now been resolved by stipulation of the parties.

The only plausible argument the Bleckmanns make in opposition to the motion for summary judgment is that Plaintiff used its "overwhelming financial advantage" to pressure the Bleckmanns into signing the various agreements. This argument, however, is unavailing. As the Court noted at the July 23, 2007 motions hearing, the Bleckmanns failed to raise any affirmative defenses in their Amended Answer. That alone precludes the Bleckmanns' coercion arguments. However, in Paragraph 6 of the Amended Answer, in response to CapitalSource's allegations with respect to the

Forbearance Agreements, the Bleckmanns allege that CapitalSource used its economic bargaining power to coerce them into signing the documents.

Even if the Court believes the Bleckmanns' version of the facts, the Bleckmanns' position is belied by their own deposition testimony. The discretionary funding letter expressly released CapitalSource from all claims and defenses the Bleckmanns could assert in connection with the Guaranty. Although the Bleckmanns claim this document was signed under duress, the Bleckmanns testified that they voluntarily executed the July 28 letter (on the advice of counsel). *See* Gilbert Bleckmann Dep. Tr. at 56:19-59:13 and 153:4-154:19; and Susan Bleckmann Dep Tr. at 30:21-31:4. The Bleckmanns' assertion that they contest liability, without more, is insufficient to defeat summary judgment. Because the Court agrees with Plaintiff that there are no genuine issues of material fact in dispute and that CapitalSource is entitled to judgment as a matter of law, the Court will grant summary judgment in favor of Plaintiff.

## **CONCLUSION**

For the reasons stated herein, and for the reasons articulated by the Court at the July 23, 2007 motions hearing, the Court will GRANT Plaintiff's Motion for Summary Judgment (Paper No. 75). An Order Consistent with this Opinion will follow.

Date:  August 8, 2007                                             /s/
                                                                           Alexander Williams, Jr.
                                                                           United States District Judge